NATIONAL PEANUT CORPORATION *vs.* FORREST W. TAYLOR, INC.

JULY 16, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. The complainant, a Pennsylvania corporation, brought this bill in equity against the respondent,

a Rhode Island corporation, which had an office in Worcester, Massachusetts, to compel specific performance of an alleged contract according to which the respondent agreed to execute a lease of certain premises at 1 Broad street in the city of Pawtucket in this state. After a hearing in the superior court on bill, answer and proof, the trial justice rendered a decision dismissing the bill and a final decree to that effect was thereafter duly entered. The cause is before us on complainant's appeal from that decree.

The only question in this cause is whether the parties entered into a binding agreement for a lease of the premises in question. With the exception of certain conflicting evidence of an incidental nature, the answer to the question at issue depends mainly upon the meaning of a series of letters that passed between the parties.

It appears in evidence that, when these proceedings were instituted, the complainant was a tenant of the respondent under a lease which was executed July 20, 1942. This lease was for three years commencing September 1, 1942, with a yearly rent of $3000, payable at the rate of $250 a month. During the life of this lease other tenants of the respondent complained of odors from the roasting of peanuts. The respondent itself was also dissatisfied with the size and color of complainant's street sign. However, it made no formal objection to the complainant directly as to either of these matters because the lease contained no provision with reference thereto.

The letters between the two corporations were signed respectively "National Peanut Corporation R. J. Lisman Secretary-Treasurer", and "Forrest W. Taylor, Inc. by Elson M. Blunt Jr. Vice President & Manager". Lisman was one of three directors of the complainant corporation. Blunt was not a member of respondent's board of directors.

Under date of February 27, 1945, complainant wrote to the respondent stating that "we are willing to accept another lease for a period of five years, at the same rental and under the same terms and conditions as our present lease,

effective September 1st, 1945." On March 8, 1945, respondent replied: "We would be interested in negotiating a further extension of your present lease providing some ventilating arrangement were installed at your expense taking the odors from your store out to the roof of the building, and further providing for some modification and improvement in the design of your present sign above your store. The rental we are asking for this store, and it appears as though we can get it in this market, is $5400. If your company can agree to these terms and qualifications, I will be very glad to put the matter up to our Directors for their approval."

Upon receipt of this letter, complainant sent Norman J. Irvin, its real estate supervisor, to see Blunt in Worcester for the express purpose of discussing the ventilating system and the sign. The testimony of Irvin and Blunt as to what occurred at this meeting is in direct conflict. Irvin in substance testified that he told Blunt that the complainant "would put in a ventilating system . . . and also cut down the signs to conform with signs in that block." He further testified, however, that he did not go into details as to the type of ventilating system that would be installed; that it was "for an engineer to lay out the system"; that he was not an engineer; and that he merely described to Blunt various ventilating systems that the complainant had used in other buildings. Blunt, on the other hand, testified that Irvin informed him in general terms that "an adequate ventilating system could be installed" and further that "he believed he could persuade his officers to modify in design and color the sign."

On the same day, Irvin, at Blunt's suggestion, went to Boston, where he had a short interview with William F. Keesler, one of respondent's directors and chairman of its executive committee. Irvin's testimony as to this meeting is substantially to the same effect as above indicated with reference to his meeting with Blunt. Keesler did not testify.

Irvin's report to Lisman was followed by complainant's letter of March 20, 1945, which read in part as follows: "In

his interview with your representative, Mr. Keesler, Mr. Irvin explained that we *could* install a ventilating system. With reference to the signs, we can reduce the size of them, if this is absolutely necessary, but the color scheme is our standard color scheme for all of our stores and we are certain there would be no objection on your part to maintaining that. . . . Our Directors rejected your proposal of $5,400.00, but have authorized the writer to accept a lease at the rate of $4,500.00 per year . . . ." (italics ours) The letter ended with a request that the matter be brought to the attention of respondent's board of directors. Respondent's reply letter of March 30, 1945 stated that it was "not willing to make a trade on this basis" and suggested that the complainant reconsider the matter and see if it could not comply with respondent's terms.

In its letter of April 7, 1945 complainant stated that its directors had finally consented to lease the premises "at a rental of $5,400.00 per year, the lease to be for five years, effective September 1st, 1945, the conditions and terms of the lease to be *exactly* the same as our present lease, with the exception of the change in rental." (italics ours) By letter of April 12, 1945, complainant was informed that the respondent no longer was in a position to accept complainant's proposition as it had committed itself "to make a lease to another tenant". The present suit was thereafter instituted by the complainant.

The trial justice denied and dismissed the bill on the ground that the complainant had failed to prove by a fair preponderance of the evidence that the parties ever reached a common understanding as to the length of the term of the lease, the ventilating system, and the sign. The complainant, as we understand its argument, contends that this was error in that it had bound itself, through Irvin, to install a ventilating system and to alter the sign, and that, by its letter of April 7, 1945, it had accepted respondent's demand for a yearly rental of $5400. It argues that Irvin's testimony respecting the ventilating system and the sign should have

been accepted by the trial justice as against that of Blunt, especially since Keesler, one of respondent's directors, "was satisfied with the ventilating system as explained to him by Mr. Irvin."

Assuming that Irvin had authority to bind the complainant in these matters, as it contends, his testimony was too indefinite, especially with reference to the ventilating system, to furnish sufficient ground for enforcement. Another and perhaps stronger reason why we cannot follow its argument on this point is that Irvin's testimony was flatly contradicted by Blunt, who testified that Irvin told him merely that a ventilating system "could" be installed and a change in the sign could be made by the complainant if there was an agreement as to the length of the lease and the amount of the rent between the parties, a matter which was admittedly beyond its authority.

The trial justice, who had the advantage of hearing and seeing these witnesses while testifying, accepted the testimony of Blunt. We cannot say that he was clearly wrong in so doing on the conflicting testimony before him. In fact, the conclusion of the trial justice on this point is supported by complainant's letter of March 20, 1945, wherein it is stated that Irvin explained to Keesler that "we could install a ventilating system" and we "can reduce" the size of the sign, if it is absolutely necessary, subject to agreement as to its color scheme. The expression of mere ability to do certain things in these circumstances is not the equivalent of a binding contractual obligation for their performance.

When the letters passing between the parties are fairly read as a whole, it is quite clear that the complainant in its final letter of April 7, 1945, with the exception of the amount of yearly rent, reverts to the same offer as that contained in its original letter of February 27, 1945. In its original letter the complainant offered to accept a lease of the premises for a period of five years "under the same terms and conditions as our present lease", and in its letter of April 7, 1945, it offered to accept a lease for that same period "the conditions

and terms of the lease to be exactly the same as our present lease, with the exception of the change in rental." The intervening communications and interviews between the parties amount to nothing more than preliminary negotiations leading up to complainant's offer as set forth in its above-mentioned letter of April 7, 1945.

The existing lease contained no stipulation with reference to a ventilating system or to the sign, which matters apparently were of importance to the respondent in the execution of a new lease. Considered in the light of intervening communications and other negotiations, complainant's last letter in effect offers to pay the advanced rental as requested, provided the new lease was for five years and provided, further, that it contained no provisions requiring the complainant to install a ventilating system or change its sign.

Furthermore, there is nothing in the letters or in the evidence to indicate that the respondent ever agreed to give complainant a lease for five years. The most that respondent ever suggested to the complainant on this point at any time is found in respondent's letter of March 8, 1945, where it says that it "would be interested in negotiating a further *extension* of your present lease" upon certain conditions. (italics ours) It is to be noted that there is no language indicating the length of the extension, and much less does it say that the extension was to be for the period requested by the complainant, even if the conditions therein mentioned were agreed upon. After a careful consideration of all the evidence in this cause and the reasonable inferences therefrom we find no reason to disturb the decision of the trial justice.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*John M. Booth,* for complainant.

*Greenough, Lyman & Cross, Owen P. Reid,* for respondent.